**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

NJM:RMP/ADR
F.#2023R00939

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

February 26, 2025

By ECF and Email

The Honorable Robert M. Levy
United States Magistrate Judge
Eastern District of New York 225
Cadman Plaza East Brooklyn,
New York 11201

Re: United States v. Mansuri Manuchekhri
Magistrate Docket No. 25-64

Dear Judge Levy:

The defendant Mansuri Manuchekhri is scheduled to be arraigned today on the above-referenced Complaint, which charges him with: (i) conspiracy to provide material support to the Islamic State ("ISIS") and the Islamic State-Khorasan Province ("ISIS-K"), in violation of Title 18, United States Code, Section 2339B(a)(1); (ii) possessing a firearm while unlawfully in the United States, in violation of Title 18, United States Code, Section 922(g)(5); and (iii) immigration fraud, in violation of Title 18, United States Code, Section 1546(a).

As explained in greater detail below, the defendant facilitated approximately $70,000 in payments to ISIS-affiliated individuals in Turkey and Syria, including to an individual who was later arrested by Turkish authorities for his alleged involvement in a January 2024 terrorist attack on a church in Istanbul for which ISIS-K publicly claimed responsibility. The defendant also frequently trained on firearms and sent videos of himself firing assault rifles to an ISIS affiliate in Turkey, on one occasion with the message, "Thank God, I am ready, brother," and on another occasion with the message, "Praise be upon God. . . . Brother, I go for training at least once or twice a week."

For the reasons set forth below, the government respectfully submits that the Court should enter an order of detention pending trial, because there is a presumption of detention due to the nature of the charges and because the defendant presents both a danger to the community and a risk of flight.

## I. Relevant Facts[1]

### A. ISIS and ISIS-K

ISIS is a designated foreign terrorist organization that has claimed credit for numerous terrorist activities as part of its broader goal of forming an Islamic state or "caliphate" in Iraq, Syria and beyond.[2] Since 2013, ISIS supporters have claimed responsibility for countless terrorist attacks, including multiple attacks against Americans in the United States, including: the May 2015 shooting in Garland, Texas, at an exhibition featuring cartoons of the Prophet Mohammed; the December 2015 shooting in San Bernardino, California, at the Inland Regional Center; the June 2016 shooting in Orlando, Florida, at the Pulse nightclub; the October 2017 West Side Highway truck attack in Manhattan; and the December 2017 attempted bombing of the 42nd Street-Port Authority Bus Terminal in Manhattan. ISIS supporters have continued to publicly express their desire to target and attack the United States and other Western nations.

ISIS and its supporters have also claimed responsibility for recent violent attacks in Europe and South Asia. For example, on March 22, 2024, ISIS-K, a regional branch of ISIS in South and Central Asia, claimed responsibility for the terrorist attack at the Crocus City Hall concert venue in Moscow, Russia, an attack that killed over 130 people and injured hundreds more.[3] It was the deadliest terrorist attack in Europe since 2004. On March 28, 2024, ISIS released a message calling for lone-wolf attacks in, among other places, the United States.

---

[1] Detailed herein is a proffer of the relevant facts and a discussion of the applicable law pertaining to the pretrial detention of the defendant. *See United States v. LaFontaine*, 210 F.3d 125, 130-31 (2d Cir. 2000) (holding that the government is entitled to proceed by proffer in detention hearings).

[2] On or about October 15, 2004, the U.S. Secretary of State ("Secretary") designated al Qaeda in Iraq ("AQI"), then known as Jam'at al Tawhid wa'al-Jihad, as a Foreign Terrorist Organization ("FTO") under Section 219 of the Immigration and Nationality Act (the "INA") and as a Specially Designated Global Terrorist ("SDGT") under section 1(b) of Executive Order 13224. On or about May 15, 2014, the Secretary amended the designation of AQI as an FTO under Section 219 of the INA and as an SDGT entity under section 1(b) of Executive Order 13224 to add the alias Islamic State of Iraq and the Levant ("ISIL") as its primary name. The Secretary also added the Islamic State of Iraq and al-Sham ("ISIS") and other aliases to the FTO listing. On September 21, 2015, the Secretary added the following aliases to the FTO and SDGT listings: Islamic State, ISIL, and ISIS. On March 22, 2019, the Secretary added additional aliases to the FTO and SDGT listings. To date, ISIS remains a designated FTO.

[3] On or about January 14, 2016, the Secretary designated ISIL Khorasan as an FTO under Section 219 of the INA and on or about January 21, 2016, as an SDGT under section 1(b) of Executive Order 13224. The Secretary has also listed additional aliases for ISIL Khorasan, including The Islamic State of Iraq and ash-Sham–Khorasan Province, Islamic State's Khorasan Province, Islamic State Khurasan, and ISIS-K. To date, ISIS-K remains a designated FTO.

B. <u>The Defendant's Conduct</u>

As alleged in the Complaint, the defendant traveled to the United States from Tajikistan in June 2016 on a non-immigrant tourist visa and remained in the country after his visa expired in December 2016. *See* Compl. ¶ 3. In March 2017, the defendant paid an American citizen to enter into a sham marriage with him so that he could obtain legal status in the United States. *See id.* ¶¶ 36-38. However, he failed to provide supporting documentation that the government requested of him, and his petition was never granted. *See id.*

From approximately December 2021 through April 2023, while residing in Brooklyn, the defendant facilitated approximately $70,000 in payments to ISIS-affiliated individuals in Turkey and Syria, including to an individual who was later arrested by Turkish authorities for his alleged involvement in a January 2024 terrorist attack on a church in Istanbul for which ISIS-K publicly claimed responsibility. *See id.* ¶¶ 13-26. In WhatsApp conversations found in the defendant's iCloud account, the defendant discussed the payments at length with an ISIS-affiliated person in Turkey. That individual told the defendant that some of the funds would go to family members of deceased ISIS fighters; as described in the Complaint, that individual also relayed, using intentionally circumspect language, that some of the funds would go to ISIS members. *See id.* ¶¶ 17-23. The individual sent the defendant photos of Syrian currency to confirm receipt of the funds, as depicted below. *See id.* ¶ 16.




The defendant expressed his support for ISIS to others by praising past ISIS attacks in the United States, *see id.* ¶ 6, and by collecting jihadi propaganda videos promoting violence and martyrdom. For example, one video found in the defendant's iCloud account featured a Hamas spokesman and ended with the message, "It is indeed a jihad of victory or martyrdom." *See id.* ¶ 8. Another video apparently produced by an ISIS media apparatus featured a lecture by an ISIS leader depicted against a background of battlefield footage and images of dead and wounded fighters. *See id.* Another video received by the defendant contained ISIS propaganda with the message, "The day of revenge is near and we will be glorious against the infidels." *See id.* ¶ 12. Below is an image that was saved to the defendant's

iCloud depicting, among other individuals, a Tajik military commander named Gulmurod Salimovich Khalimov who defected to ISIS in 2015 (Khalimov is second from right). *See id.* ¶ 9. The image comes from a documentary about Khalimov that the defendant sent to an associate via WhatsApp. *See id.*



The defendant also possessed and used firearms and made frequent visits to shooting ranges even though he was prohibited from doing so as an alien unlawfully in the United States. *See id.* ¶ 29. Photographs and videos in the defendant's iCloud account depict his possessing and using firearms at the ranges, as shown below. *See id.* ¶ 30. Additional photographs and communications in the defendant's iCloud account indicate that that he may have been seeking to illegally purchase a firearm. *See id.* ¶ 31.








The defendant's firearms training was directly related to his support for ISIS's violent agenda. In February 2022, the defendant sent a recording of himself firing an assault rifle at a shooting range in New Jersey to one of the ISIS-affiliated individuals in Turkey with the message, "Thank God, I am ready, brother." *See id.* ¶ 33. In June 2022, the defendant sent another video of himself firing an assault rifle to the same ISIS-affiliated individual in Turkey with the message, "Brother, I go for training at least once or twice a week." *See id.* ¶ 34.

II. Legal Standard

Under the Bail Reform Act, Title 18, United States Code, Section 3141, *et seq.*, federal courts are required to order a defendant's detention pending trial upon a determination that the defendant is either a danger to the community or a risk of flight. *See* 18 U.S.C. § 3142(e) (a judicial officer "shall" order detention if "no condition or combination of conditions would reasonably assure the appearance of the person as required and the safety of any other person and the community"). A finding of dangerousness must be supported by clear and convincing evidence. *See United States v. Ferranti*, 66 F.3d 540, 542 (2d Cir. 1995); *United States v. Chimurenga*, 760 F.2d 400, 405 (2d Cir. 1985). A finding of risk of flight must be supported by a preponderance of the evidence. *See United States v. Jackson*, 823 F.2d 4, 5 (2d Cir. 1987); *Chimurenga*, 760 F.2d at 405.

The Bail Reform Act lists the following factors to be considered in the detention analysis: (1) the nature and circumstances of the offenses charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. *See* 18 U.S.C. § 3142(g).

For certain offenses, including the material support charge contained in the Complaint, the law presumes that there is no set of conditions that will reasonably assure the defendant's appearance or the safety of the community. *See* 18 U.S.C. § 3142(e)(3)(C) (imposing a rebuttable presumption of detention for "an offense listed in section 2332b(g)(5)(B) for which a maximum term of imprisonment of 10 years or more is prescribed"). The material support offense with which the defendant is charged is listed in section 2332b(g)(5)(B) and carries a maximum term of 20 years, which thus triggers the presumption that detention is appropriate to mitigate the risks of danger and flight.

This presumption may be rebutted by the defendant, provided the defendant is able to present evidence that he is neither a danger nor a risk of flight. *See United States v. Mercedes*, 254 F.3d 433, 436 (2d Cir. 2001). Even upon such a showing, however, the presumption in favor of detention "does not disappear entirely, but remains a factor to be considered among those weighed[,]" *id.*, because it "reflects Congress's substantive judgment that particular classes of offenders should ordinarily be detained prior to trial" and "represents Congressional findings that certain offenders are likely to continue to engage in criminal conduct undeterred either by the pendency of charges against them or by the imposition of monetary bond or other release conditions." *United States v. Stone*, 608 F3d 939, 945-46 (6th Cir. 2010) (internal quotation marks and citation omitted) (alteration adopted).

III. The Court Should Enter an Order of Detention for the Defendant

As set forth above, there is a presumption that no condition or combination of conditions will permit the defendant to be released on bond. Moreover, the factors to be considered in the detention analysis show that the defendant presents both a significant danger to the community and a substantial risk of flight if released on bond. Accordingly, the Court should enter an order of detention pending trial.

A. The Law Presumes that the Defendant Should Be Detained Pending Trial

The defendant is charged with an offense that triggers a presumption of detention. Specifically, the facts detailed in the Complaint establish probable cause to believe that the defendant has committed (1) a violation of 18 U.S.C. § 2339B, an offense which is listed in 18 U.S.C. § 2332b(g)(5)(B), and for which the maximum authorized term of imprisonment is 20 years.

Thus, in this case, the law presumes that there is no condition or combination of conditions of release that will reasonably assure the safety of the community or the defendant's appearance as required. *See* 18 U.S.C. § 3142(e)(3)(C).

B. The Nature and Circumstances of the Offenses Charged

The charged offenses are extremely serious. The defendant is charged with providing material support to ISIS, a terrorist organization that is responsible for countless acts of violence, including attacks in the United States. ISIS has called for additional attacks on targets around the world and in the United States. The defendant's communications also suggest that he may be prepared to take violent action on his own in furtherance of ISIS's goals. The defendant frequently trained on firearms and sent a recording of himself firing an assault rifle to an ISIS affiliate in Turkey with the message, "Thank God, I am ready, brother," and on another occasion sent a similar video to the same person with the message, "I go for training at least once or twice a week."

In listing the "nature and circumstances of the offense charged" as a criterion in the detention analysis, the Bail Reform Act specifically provides that the Court is to consider whether the crime charged is, among others, a federal crime of terrorism or a crime involving a firearm. *See* 18 U.S.C. § 3142(g)(1). The charged offenses unquestionably fall within these categories, confirming that Congress viewed these crimes as sufficiently serious to factor against release on bond. *See* 18 U.S.C. § 2332b(g)(5)(B)(i) (defining "Federal crime of terrorism" to include "an offense that . . . is a violation of . . . 2339B (relating to providing material support to terrorist organizations)").

Indeed, as set forth above, Congress recognized the seriousness of the terrorism offense charged here by specifically enumerating it among those offenses that carry a presumption that no condition or combination of conditions will be sufficient to permit a defendant to be released on bond. Even where a defendant can rebut this presumption, the Court is still required to give some weight to the presumption in the detention analysis, "keeping in mind that Congress has found that these offenders pose special risks" and that "a strong probability arises that no form of conditional release" will assure the defendant's return to court

or adequately protect the community. *United States v. Martir*, 782 F.2d 1141, 1144 (2d Cir. 1986) (citation and internal quotation marks omitted).

Moreover, the charged offenses collectively carry a maximum sentence of more than 40 years' imprisonment and likely a very high Guidelines sentencing range due to the terrorism offense. The prospect of a lengthy term of incarceration further gives rise to a serious risk of flight. *See United States v. Jackson*, 823 F.2d 4,7 (2d Cir. 1987); *Martir*, 782 F.2d at 1147 (defendants charged with serious offenses whose maximum combined terms created potent incentives to flee); *United States v. Cisneros*, 328 F.3d 610, 618 (l0th Cir. 2003) (defendant was a flight risk because her knowledge of the seriousness of the charges against her gave her a strong incentive to abscond).

The defendant's unlawful presence in the United States and his willingness to commit fraud in order to obtain lawful status here also tend to demonstrate that he would be unlikely to abide by conditions of release. Instead, there is every reason to believe that the defendant will make efforts to flee from accountability and the prospect of a lengthy prison term followed by deportation, either by seeking to remain in the United States, where he lives without lawful status even now, or by fleeing to directly join up with other members of the terrorist organization he has financially supported for years.

C. The Weight of the Evidence

The weight of the evidence against the defendant is strong. Documentary evidence, including financial records and WhatsApp chats, as well as photographic and video evidence, confirms that the defendant facilitated thousands of dollars of transfers to individuals affiliated with ISIS, that he had extensive conversations with ISIS affiliates, and that he sent and received violent ISIS propaganda. Moreover, WhatsApp chats and photos and videos found on the defendant's iCloud account plainly demonstrate that he used firearms; the defendant even sent videos of himself firing assault rifles to an ISIS affiliate. Lastly, WhatsApp chats and official documents demonstrate that he committed brazen immigration fraud by paying someone to enter into a sham marriage with him. Because the evidence against the defendant is strong, this factor weighs heavily in favor of a finding that the defendant is both a danger to the community and a flight risk. Where, as here, the evidence of guilt is strong, it provides "a considerable incentive to flee." *United States v. Millan*, 4 F.3d 1038, 1046 (2d Cir. 1993); *see also United States v. Palmer-Contreras*, 835 F.2d 15, 18 (1st Cir. 1987) (per curiam) (where "the evidence against defendants is strong, the incentive for relocation is increased").

D. The Defendant's History and Characteristics

The defendant's history and characteristics confirm that he is both a danger to the community and presents a substantial risk of flight. First, as discussed above, the defendant is a danger to the community because of his affiliation with ISIS: specifically, he has raised money for and sent money to ISIS, and he has engaged in frequent firearms training about which he has communicated with ISIS, suggestive of a potential willingness to take up arms for the terrorist cause.

Second, the defendant's history and characteristics also confirm that he presents a substantial risk of flight. The defendant is a Tajik national who has no legal status here in the United States. Indeed, he has previously shown his willingness to commit fraudulent and dishonest acts and has repeatedly lied to the government in connection with his immigration status here. The defendant has limited ties to the United States and no significant ties to the community in the Eastern District of New York.

E. The Danger to the Community Posed by the Defendant's Release

Finally, as discussed above, the defendant poses a significant danger to the community if he were released on bond. The defendant repeatedly facilitated financial support to ISIS, a ruthless, violent terrorist organization, and is sympathetic to ISIS's cause. He has trained on firearms and sent videos of himself firing an assault rifle to an ISIS affiliate with the message, "Thank God, I am ready, brother," and on another occasion, "I go for training at least once or twice a week." His willingness to support ISIS's terrorist cause and to communicate about his own firearms training with ISIS clearly demonstrate the danger that the defendant poses to the community if not detained.

IV. Conclusion

For the foregoing reasons, the defendant should be detained pending trial. The defendant is charged with extremely serious offenses that carry a presumption of detention. He is highly dangerous, and he faces a potential sentence of decades in prison. The government respectfully submits that no condition or combination of conditions will assure the safety of the community, the defendant's return to Court, or his compliance with the Court's directives, and the Court should thus enter an order of detention pending trial.

Respectfully submitted,

JOHN J. DURHAM
United States Attorney

By: /s/ ______________________
Robert M. Pollack
Andrew D. Reich
Assistant U.S. Attorneys
(718) 254-7000

cc: Clerk of Court (by Email)
Counsel of Record (by Email)